# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROCKIN' CREPES, INC., MARTHA BENNETT, FRANK PESTARINO, and DOES 1-10,<br><br>Defendants. | CASE NO. 8:16-CV-01901-CJC-JCGx<br><br>**JUDGMENT** |

On February 16, 2017, Plaintiff AMCO INSURANCE COMPANY ("AMCO") filed its Application for Default Judgment against Defendants ROCKIN' CREPES, INC. ("RCI"), MARTHA BENNETT ("Bennett"), and FRANK PESTARINO ("Pestarino") (collectively referred to as "Defendants") (Dkt. No. 19). The hearing on AMCO's Application was set for March 20, 2017.

Pursuant to Federal Rules of Civil Procedure, Rule 55, and the Court's Local Rule 55-1, AMCO has established that (1) the Court clerk entered default against Defendants on January 19, 2017; (2) the default was entered as to AMCO's Complaint; (3) Defendants are not infants or incompetent persons; (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply; and (5) AMCO's Application for Default Judgment

has been served upon Defendants. Hence, the procedural requirements for default judgment have been satisfied.

However, Defendants have not opposed AMCO's Application for Default Judgment or otherwise appeared in this action.

On March 6, 2017, the Court, having read and considered the papers presented, found this matter appropriate for disposition without hearing, vacated the hearing and issued an Order Granting in Part Default Judgment (Dkt. No. 25).

The Court granted AMCO's Application For Default Judgment against Defendants, in part, in favor of Plaintiff AMCO for the factual and legal reasons set forth in its Order Granting in Part Default Judgment, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated by this reference as though set forth herein in full.

**IT IS HEREBY ORDERED AND ADJUDGED** that:

1. Judgment is hereby entered in favor of Plaintiff AMCO INSURANCE COMPANY against Defendants ROCKIN' CREPES, INC. ("RCI"), MARTHA BENNETT ("Bennett"), and FRANK PESTARINO ("Pestarino"), in part, in accordance with the Court's Order Granting in part Plaintiff's Motion for Default Judgment (see Exhibit A).

2. Plaintiff AMCO is awarded $124,681.71 in damages and pre-judgment interest from October 22, 2013, to March 13, 2017, pursuant to 28 U.S.C. section 1961, in the amount of $1,560.41, for a total judgment of **$126,242.12**.

3. Plaintiff AMCO is awarded post-judgment interest, pursuant to 28 U.S.C. section 1961, calculated from the date of this Judgment to the date that Defendants satisfy this Judgment.

Dated: July 6, 2017

UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT A**

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

|  |  |
|---|---|
| AMCO INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROCKIN' CREPES, INC., MARTHA BENNETT, FRANK PESTARINO, and DOES 1–10,<br><br>Defendants. | Case No.: SACV 16-01901-CJC(JCGx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

## I. INTRODUCTION

Plaintiff AMCO Insurance Company filed this lawsuit against Defendants Rockin' Crepes, Inc. ("RCI"), Martha Bennett, and Frank Pestarino, for fraud, conversion, and declaratory relief in connection with alleged material representations Defendants made in the course of obtaining insurance benefits from AMCO. (*See generally* Dkt. 1

-1-

[Complaint, hereinafter "Compl."].) Before the Court is AMCO's motion for default judgment against Defendants. (Dkt. 21 [Motion, hereinafter "Mot."].) For the following reasons, the motion is GRANTED IN PART.[1]

## II. BACKGROUND

RCI owns a crepe restaurant located at 8943 Atlanta Avenue, Huntington Beach, California. (Compl. ¶ 9.) Bennet is the sole shareholder of RCI and Pestarino is its manager. (*Id.* ¶¶ 3–4.) AMCO issued RCI a "Premier Businessowners" insurance policy (the "Policy"), effective from August 1, 2013, to August 1, 2014, which provided coverage for "business personal property" and "loss of business" in connection with RCI's restaurant. (*Id.* ¶ 9; *see also id.* Ex. A.) The Policy contains a clause that voids coverage "in any case of fraud, at any time, by you or your representative as it relates to this policy," or where a covered party or its representative "at any time, conceal[s] or misrepresent[s] any material fact, or violate[s] any material warranty, concerning" a claim under the Policy. (*Id.* ¶ 10; *id.* Ex. A at 2000071–72.)

On August 17, 2013, RCI submitted a claim to AMCO, stating that there was a leak from an unknown source in two areas of its restaurant that produced "sewage-like odors." (*Id.* ¶ 12.) Two days later, AMCO retained American Leak Detection ("ALD") to investigate the source of the leaks and the damage caused. (*Id.* ¶ 13.) ALD determined that there were "numerous leaks at various fixtures in the restaurant's bar and kitchen areas, though none included any pressurized pipes or sewer pipes. The damage appeared to be concentrated on laminate flooring in the restaurant." (*Id.*) Thus, on August 31, 2013, AMCO authorized an initial cash payment of roughly $675 for damage

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 20, 2017, at 1:30 p.m. is hereby vacated and off calendar.

and $5,000 for loss of business income, based on Pestarino's representation that the restaurant averaged between $45,000 and $50,000 in gross monthly sales. (*Id.*¶ 14.)

On September 10, 2013, RCI's damaged flooring was removed and mold was discovered beneath it. (*Id.* ¶ 15.) A mold remediation contractor performed testing and remediation between September 24 and October 3. (*Id.*) Between August 17 and October 31, RCI retained contractors to repair its floors, walls, and plumbing. (*Id.*)

On September 18, 2013, RCI's landlord demanded rent payment. (*Id.* ¶ 16.) Pestarino spoke to AMCO claims specialist Ron Hill about the issue, and Hill advised him that "since [the restaurant] was closed and could not operate due to moisture intrusion damage [the] rent should abate." (*Id.*) The landlord refused to abate rent, so AMCO agreed to provide coverage for rent and continued business income loss. (*Id.*) Pestarino advised that he hoped to re-open the restaurant on October 24, 2013. (*Id.*) AMCO advanced another $5,000 for lost business income and $4,223.44 for business personal property damage. (*Id.* ¶ 17.)

AMCO also retained accountant Robert Salata of LBC International, who estimated that RCI incurred a total business income loss of $107,622.27. (*Id.* ¶ 18.) On or about October 22, 2013, AMCO issued payments to RCI for the remaining $97,622.27 in business income loss and $6,260.50 in business personal property damage. (*Id.* ¶ 19.) In total, AMCO had paid RCI $120,267.21 in policy benefits ($12,644.94 for damage to business personal property and $107,622.27 for business income loss.) On October 25, 2013, Pestarino advised Hill that he had to delay re-opening of the restaurant because the gluten-free flour that the restaurant uses was not available. (*Id.* ¶ 20.) On November 7, 2013, Pestarino sent a photograph to Hill and Salata via email, and included a caption reading "Ron and Bob—here's the first beer I just served!" (*Id.*)

However, on October 29, 2013, Hill received an email from Gabriel Sturbin of Western Republic Insurance Services, RCI's insurance broker, stating, "There are some serious concerns regarding the legitimacy of the loss concerning business interruptions that may have been reported. [Broker] is requesting a return call at the earliest opportunity. Hopefully prior to claim payment." (*Id.* ¶ 21.) When Hill spoke with Sturbin, he learned that Sturbin's colleague, Dustin Keeney, had been to RCI's restaurant four weeks earlier and noted that the bar was open, and Hill later confirmed this with Keeney himself. (*Id.* ¶ 22.) Keeney was friends with one of the restaurant's managers, Andrew McCarty, who told him that the restaurant had had a refrigerator leak, but that it was "no big deal." (*Id.*) Although Keeney and McCarty regularly speak, McCarty never mentioned being out of work. (*Id.*)

AMCO's special investigations unit ("SIU") then discovered that on August 23, September 2, 8, 16, 23, 26, and 28, October 1, 8, 9, 10, 14, and 20, "various comments were posted to RCI's Facebook page, each indicating that the restaurant was open and operating." (*Id.* ¶ 24.) It also learned that on September 25, 2013, Salata had e-mailed Pestarino to advise that he had seen that the restaurant was open that day. (*Id.*) On November 1, 2013, an AMCO SIU employee, Michelle R. Hetzler, called the restaurant and was informed that it was open and serving food until 10:00 p.m. (*Id.* ¶ 25.) On November 4, 2013, Hetzler went to the restaurant and ordered a gluten-free crepe. (*Id.*)

On December 27, 2013, RCI submitted an incomplete statement of proof of loss, which was notarized and signed by Bennett and Pestarino. (*Id.* ¶ 26.) AMCO did not receive a completed proof of loss statement until January 23, 2014. (*Id.* ¶ 27.) The statement was dated January 8, 2014, and claimed $1,200 in mold remediation, $13,133.33 in repairs, $6,066.27 in spoilage, and $107,622.27 in business income loss. (*Id.*; *id.* Ex. B.)

4

In April 2014, AMCO's SIU referred the matter to the California Department of Insurance ("DOI") for consideration. The DOI requested more information, so SIU continued the investigation. (*Id.* ¶ 28.) In September 2014, AMCO retained counsel to assist the investigation and adjustment of the claim. (*Id.*) On October 20, 2014, counsel for AMCO sent a letter to RCI (to Pestarino's attention), setting forth AMCO's reservation of rights and requesting that Pestarino appear for examination under oath on December 2, 2014. (*Id.* ¶ 29.) Pestarino advised that he was seeking counsel and requested that the examination be taken off calendar until he could find counsel. (*Id.* ¶ 30.) AMCO agreed in writing and requested that his attorney contact them as soon as possible to reschedule the examination. (*Id.*) Pestarino did not respond to that letter, and did not respond to AMCO's subsequent letters dated December 2, 16, and 31, 2014, and January 15 and 26, 2015, which repeated that request. (*Id.* ¶ 31.)

On February 9, 2014, Daniel King of the Genesis Law Group informed AMCO via email that he represented RCI and Pestarino. (*Id.* ¶ 32.) AMCO then requested that King contact them to schedule Pestarino's examination, but King did not respond. (*Id.*) AMCO again wrote to King on February 28, March 17, and April 15, and in the latter two letters advised that if it did not hear from him within 10 days it would assume that RCI did not wish to pursue its claim further. (*Id.* ¶ 33.) King then left AMCO a voicemail on April 29, explaining that he had been ill. (*Id.*) AMCO returned the call that same day, but King did not answer or return the call. (*Id.*)

After King and Pestarino failed to follow up, on September 3, 2015, AMCO denied the balance of RCI's claim and demanded the return of all policy benefits paid to date. (*Id.* ¶ 34.) King then contacted AMCO shortly after to advise that Pestarino would appear for an examination, which he did on December 1, 2015. (*Id.* ¶ 35.) Pestarino claimed not to have any knowledge or recollection of the pertinent facts underlying the claim, and when confronted with information indicating that the business income loss

portion of the claim contained fraudulent misrepresentations, Pestarino denied that such information was correct. (*Id.*) AMCO then filed this action for fraud, conversion, and declaratory relief on October 17, 2016. (*See generally* Compl.) AMCO seeks to recover money paid to Defendants under the Policy, as well as costs, attorneys' fees, prejudgment interest, and punitive damages. (*Id.* at Prayer for Relief.) Defendants have not appeared in the action. (Dkt. 15.)

## III. ANALYSIS

Rule 55(b)(2) of the Federal Rules of Civil Procedure and this Court's Local Rule 55-1 "require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Mc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, AMCO has set forth the required information: (1) the clerk entered default against Defendants on January 19, 2017, (Dkt. 15); (2) the default was entered as to the Complaint, (*id.*); (3) Defendants are not infants or incompetent persons, (Dkt. 22 [hereinafter "Pardini Decl."] ¶¶ 4–5, 7); (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply, (*id.* ¶¶ 4, 6, 8); and (5) AMCO's motion has been served upon Defendants, (Dkts. 8, 9, 10). Accordingly, the procedural requirements for default judgment are satisfied.

//
//

After entry of default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55(a)–(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors articulated in *Eitel v. McCool*, 782 F.2d 1470, (9th Cir. 1986), in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471–72. Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, the *Eitel* factors weigh in favor of entry of a default judgment against Defendants. The Court considers each in turn.

*1. Possibility of Prejudice to Plaintiff*

If the motion for default judgment is not granted, AMCO "would be denied the right to judicial resolution of the claims presented." *Elektra Entertainment Group, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). By choosing to default rather than defend, Defendants are "deemed to have admitted the truth of Plaintiff[s'] averments," *Philip Morris*, 219 F.R.D. at 499, thereby establishing liability. Absent the entry of default judgment against Defendants, AMCO would be prejudiced, as it would be left without the ability to seek relief to which it is entitled.

*2. & 3. The Merits of the Claim and the Sufficiency of the Complaint*

The second and third *Eitel* factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." *Phillip Morris*, 219 F.R.D. at 499. Plaintiff's first and second causes of action are for fraud and conversion. (Compl. ¶¶ 36–40, 41–45.) The elements of fraud are "(1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages." *Ragland v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182, 199–200 (2012). Here, the complaint pleads with particularity that (1) Defendants falsely represented that the restaurant remained closed until November 7, 2013, (2) Defendants knew that was false because they kept the restaurant open and operational between August and November 2013, (3) Defendants intended to deceive AMCO to obtain policy benefits they would not otherwise be entitled to, (4) AMCO justifiably relied on such representations, and (5) as a result, AMCO paid Defendants a sum of $120,267.21 in policy benefits. (Compl. ¶¶ 9–27, 36–40.) The elements of fraud are satisfied. Conversion, in turn, is the "wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). The Complaint's allegations also sufficiently satisfy this cause of action because AMCO has alleged that through fraudulent conduct Defendants induced AMCO to pay a sum of money that Defendants were not entitled to take. (Compl. ¶¶ 9–27, 41–45.)

AMCO's third and fourth causes of action seek declaratory relief that the Policy is void as a result of Defendants' fraud and that AMCO has a right to recover benefits paid. (*Id.* ¶¶ 46–56.) Declaratory relief is warranted where there exists an actual case or controversy between the parties. *Aydin Corp. v. Union of India*, 940 F.2d 527, 527 (9th Cir. 1991). "The Ninth Circuit has consistently held that a dispute between an insurer

and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Praetorian Ins. Co. v. Analy Mortg. Ctr.*, No. CV10-03100 ODW JCX, 2010 WL 3985261, at *3 (C.D. Cal. Oct. 8, 2010) (citing *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (*en banc*) and *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994)). Since AMCO has already paid Policy benefits and now contends that such benefits were obtained fraudulently, there exists an actual controversy between the parties. AMCO has also demonstrated that under the terms of the Policy, fraud and material representations made in connection with a claim will void the policy. (Compl. ¶ 10; *id.* Ex. A at 2000071–72.) Accordingly, AMCO's third and fourth causes of action are sufficiently pled.

Defendants have not responded to the Complaint, and their default is therefore deemed an admission of the well-pled facts in the Complaint. *Elektra Entertainment*, 226 F.R.D. at 392. Accordingly, the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 4. The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Security Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471–72. AMCO seeks recovery of the $120,267.21 in damages, prejudgment interest from October 22, 2013 in the amount of $39,935.30 and continuing at a rate of $32.95 per day, attorneys' fees in the amount of $45,255.50, $3,376.46 in litigation costs, and $4,414.50 in investigation costs. (Mot. at 2–3.) This sum is reasonable, since AMCO only seeks damages sufficient to make it whole—namely, the money that was wrongly obtained by Defendants, plus interests, costs, and fees to recover such money. Therefore, this factor weighs in favor of default.

### 5. & 6. The Possibility of a Dispute Concerning Material Facts and Whether the Default was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendants' failure to litigate is due to excusable neglect. AMCO's counsel avers that since the summons and complaint were served on Defendants, he and defense counsel "have spoken with each other and exchanged numerous e-mails about this case and whether an informal resolution could be achieved; he has indicated [] on numerous occasions that Defendants would file a response to the complaint, but no response has been forthcoming." (Pardini Decl. ¶ 10.) There is no evidence of a factual dispute or excusable neglect, since Defendants chose not to appear to defend the action even though they retained counsel who has acknowledged receipt of the Complaint and summons. (*See id.*) These factors weigh in favor of default.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment. Nonetheless, Defendants' choice not to defend itself renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177. Since the other *Eitel* factors all weigh in favor of granting default judgment here, the Court will exercise its discretion to grant AMCO's motion for default judgment.

**B. Relief Sought**

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiffs carry the burden of proving up their

damages and requests for other relief. *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

"Plaintiff's burden in 'proving up' damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Philip Morris*, 219 F.R.D. at 498 (internal citations omitted). AMCO requests $120,267.21 in damages as reimbursement of the policy benefits paid to Defendants, which is supported by the specific allegations of the Complaint and the declaration of AMCO's California Commercial Claims Specialist Stefani J. Lavitt, (Dkt. 21 ¶ 5). AMCO also seeks $4,414.50 to reimburse it for the cost of investigating Defendants' fraud—$1,120.50 to plumbers and $3,295 to Salata's accounting firm for assessing RCI's business income loss. These damages all flow naturally from the well-plead injuries in the Complaint and are simple to calculate, so the Court will award them. AMCO is entitled to a total of $124,681.71 in damages.

AMCO also seeks prejudgment interest from October 22, 2013 in the amount of $39,935.30 and continuing at a rate of $32.95 per day. (Mot. at 3.) California Civil Code section 3287 governs the issue of prejudgment interest. "Specifically, 'section 3287, subdivision (a), establishes the right of a plaintiff to recover prejudgment interest whenever the amount of money due is liquidated—i.e., when the damages are certain, or capable of being made certain by calculation." *UBS Fin. Servs., Inc. v. Martin*, No. 13-CV-1498-MMA-DHB, 2014 WL 2159280, at *8 (S.D. Cal. May 23, 2014) (quoting *Marine Terminals Corp. v. Paceco, Inc.*, 145 Cal. App. 3d 991, 994 (1983)). "Additionally, under subdivision (a), '[p]rejudgment interest must be granted as a matter of right if damages are certain or ascertainable, and the interest runs from the date when

the damages are certain or ascertainable and when the sum due is made known to the defendant.'" *Id.* (quoting *E.L. White, Inc. v. City of Huntington Beach*, 138 Cal.App.3d 366, 377 (1982). Here, the damages are certain and capable of calculation, so Plaintiffs AMCO is entitled to pre-judgment interest from October 22, 2013 (the date AMCO issued payments to RCI for the remaining $97,622.27 in business income loss and $6,260.50 in business personal property damage, (Compl. ¶ 19)). However, AMCO has not provided calculations or otherwise explained why the lump sum of $39,935.30 (plus $32.95 per day) is appropriate. Since AMCO has not requested pre-judgment interest at a specific rate, the rate provided in 28 U.S.C. § 1961 will apply. *See W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984) (It is appropriate to apply § 1961 to prejudgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate.").

Next, AMCO requests $3,376.46 in litigation costs. (Mot. at 2–3.) In the absence of an agreement or fee-shifting statute authorizing "non-taxable" costs, only the following "taxable" costs may be awarded, pursuant to 28 U.S.C. § 1920: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." Section 1920 is interpreted narrowly, and taxable costs are limited to "relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). AMCO has not itemized its request for costs or otherwise explained how it arrived at the lump sum of $3,376.46, so the Court is unable to ascertain how much of those costs it is entitled to recover. Accordingly, the Court does not award AMCO's requested litigation costs.

Finally, AMCO seeks attorneys' fees in the amount of $45,255.50. Again, it has not explained how it arrived at that figure—it has not provided the Court with an itemized list of counsel's activities or his billing rate. Nor did AMCO explain why the Court should depart from the attorneys' fee schedule provided in Local Rule 55-3 for default judgment cases, which states that for a damages award of over $100,000, counsel is entitled to $5,600 plus 2% of the amount over $100,000. L.R. 55-3. Moreover, fees are only warranted "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees." *Id.* AMCO has not cited, and the Court is unaware of, any agreement, statute, or other authority in support of its request for fees. Accordingly, the Court does not award AMCO requested attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED IN PART. Plaintiff is awarded $124,681.71 in damages and pre-judgment in accordance with 28 U.S.C. § 1961. Plaintiff is DIRECTED to file a proposed judgment within SEVEN DAYS of this Order.

DATED: March 6, 2017

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE
*Amco Insurance Company v. Rockin' Crepes, Inc, et al.*

USDC – Central District, Southern Division Case No. 16-CV-01901-CJC-JCGx

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, California, 94104. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On March 13, 2017, I served the following document:

**[PROPOSED] JUDGMENT**

I served the document on the following person at the following address (including a fax number and email address, if applicable):

| | |
|---|---|
| Daniel King, Esq.<br>Genesis Law Group<br>3435 Wilshire Blvd., Suite 1111<br>Los Angeles, CA 90010<br>Tel: 213.388.3887<br>Email: djyking@gmail.com<br>***Attorneys for Defendants* ROCKIN' CREPES, INC., MARTHA BENNETT, FRANK PESTARINO** | Rockin Crepes, Inc.<br>Frank Pestarino<br>Martha Bennett<br>8943 Atlanta Avenue<br>Huntington Beach, CA 92646<br>Tel: 714.767.9781<br>***Defendants* ROCKIN' CREPES, INC., MARTHA BENNETT, FRANK PESTARINO** |

The document was served by the following means:

**tEl** The document was served by CM/ECF (excluding those not registered for CM/ECF who were served by mail, if applicable):

**tEl (BY OVERNIGHT DELIVERY)** I enclosed the document in an envelope or package provided by an overnight delivery carrier and addressed to the person at the address listed above. I placed the envelope or package for collection and delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: March 13 2017

_____
B. Yasinah Johnson